**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LISA M. MAVROGIANIS,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 14-2077 (JEB) |
| **ROBERT A. McDONALD, Secretary,**<br>**Department of Veterans Affairs,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Lisa Mavrogianis, an employee at the Department of Veterans Affairs, has brought this suit claiming discrimination under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act. She now moves for partial summary judgment on her claim that the VA failed to accommodate her physical injury by refusing to permit her three days of telework per week. In support of her position that there are no genuine disputes of material fact, she points solely to the conclusions in a Final Agency Decision (FAD) issued by the Department's Office of Employment Discrimination. Because the Department properly <u>rescinded</u> that FAD, however, the Court finds that it has no evidentiary or legal effect. As such, Mavrogianis cannot prevail at this stage, and the Court will deny her Motion.

**I.**   **Background**

At the time of the events underlying this case, Plaintiff served within the VA as a Management Analyst in the Office of the Assistant Secretary for Policy and Planning in Washington, D.C. <u>See</u> Pl. Exh. 2 (EEO Investigative Report) at 2. In November 2012, she was diagnosed with a hip labral tear, the cause of which was unknown. <u>See</u> Pl. SOF (ECF No. 15,

Attach. 1), ¶ 4; Def. SOF (ECF No. 18, Attach. 1), ¶ 4.  This tear, along with other problems in

her musculoskeletal system, caused her to suffer "pain, inflammation, restricted movement, and

loss of flexibility while walking, bending, reaching, twisting, lifting, and pushing/pulling

weights."  Pl. SOF, ¶ 5; see also Def. SOF, ¶ 5.  In December 2012, Mavrogianis's orthopedist

recommended workplace accommodations that could help to stabilize and improve her condition.

These included medical leave and time off for recovery, a flexible work schedule, fixed working

conditions and duties, and telework.  See Pl. SOF, ¶ 6; Def. SOF, ¶ 6.

     In July 2013, after the VA moved her workspace to a new building, Plaintiff filed a

written request for various accommodations she believed to be reasonable, including three days

per week of telework.  See Pl. SOF, ¶ 9; Def. SOF, ¶ 9.  Her orthopedist supported this request in

a written letter, explaining that Mavrogianis's new cubicle had different furniture and less space,

requiring her to move about in more painful ways than she had at her previous workstation.  See

Pl. SOF, ¶ 10; Def. SOF, ¶ 10.  In September 2013, the physician followed up with another letter,

noting that her medical condition had worsened and stressing the need for further

accommodations.  See Pl. SOF, ¶ 11; Def. SOF, ¶ 11.

     A couple months passed and in November 2013 the VA management granted some of

Plaintiff's requested accommodations, permitting her, *inter alia*, to telework from home one day

per week as part of a compressed work schedule.  See Pl. SOF, ¶ 12; Def. SOF, ¶ 12.  The

Department's Reasonable Accommodation Coordinator did not approve Plaintiff's three-day-

telework request, but later the VA requested updated medical documentation to support that

request.  See Pl. SOF, ¶¶ 13-14; Def. SOF, ¶¶ 13-14.  On February 12, 2014, Mavrogianis filed

an Equal Employment Opportunity (EEO) complaint alleging that the VA had failed to

accommodate her disability, subjected her to a hostile work environment based on disability

discrimination, and retaliated against her for requesting reasonable accommodations.  <u>See</u> EEO

Investigative Report at 62-65.  The Department indicated that it would begin investigating her

complaint.  <u>See id.</u> at 65-66.

By June 2014, the Department had decided to allow all employees on compressed work

schedules to take up to two days per week of telework, and Mavrogianis indicated via email to

the Accommodations Coordinator that she would "suffer and accept" the two-day-telework

option.  <u>See</u> Pl. SOF, ¶ 16; Def. SOF, ¶ 16.  Her physician nevertheless sent another letter that

month, again expressing the view that the best accommodation for Plaintiff would be "to permit

her to work from home as frequently as possible, but at least three days per week."  Pl. SOF,

¶ 18; <u>see also</u> Def. SOF, ¶ 18.

About six months later, on December 10, 2014, Mavrogianis filed the instant lawsuit in

this Court, naming Robert McDonald, Secretary of the Department of Veterans Affairs, as

Defendant.  <u>See</u> ECF No. 1 (Complaint).  In her Complaint, she described her request for

accommodation and the Department's failure to acquiesce, as well as its "creation of a hostile

work environment for plaintiff, [by] having taken discriminatory and retaliatory adverse actions

against" her.  <u>See id.</u>, ¶ 19.  Plaintiff argued that these actions on the part of the VA caused her to

suffer economic losses, lost career opportunities, and emotional distress.  <u>See id.</u>, ¶ 18.  As such,

she claimed, the VA had violated Title VII of the Civil Rights Act of 1964, as amended by the

Equal Employment Opportunity Act, as well as the Rehabilitation Act of 1973.  <u>See id.</u>, ¶ 19.

She sought compensatory damages to the tune of $300,000 plus interest; an injunction requiring

the VA to permit her to telework three days per week and to provide her with various other

accommodations when at work; an order that the VA restore all the annual and sick leave she has

taken in connection with its failure to accommodate her and that it provide her with excellent

performance ratings during the time at issue in the Complaint; and attorney fees and costs.  See id. at 9.

Three months after initiating this civil suit, Plaintiff filed a second EEO complaint with the VA on March 4, 2015, raising a "single claim regarding a performance evaluation."  Pl. Exh. 1 (FAD) at 1, n.1.  (That second complaint, although mentioned in the parties' briefing, does not appear to be in the record at present.)

On March 31, 2016, the VA's Office of Employment Discrimination Complaints Adjudication (OEDCA) issued what it labeled a "Final Agency Decision" disposing of both of Mavrogianis's consolidated EEO complaints.  See FAD at 1.  That FAD described at length the investigation the EEO had conducted, and it concluded that Plaintiff "has established that the agency discriminated against her on the basis of her disability when it failed to accommodate her as repeatedly requested by her physician."  Id. at 29.  It also concluded, however, that she had "failed to prove by a preponderance of the evidence that the agency subjected her to unlawful workplace harassment on the basis of disability or reprisal . . . [or] that the agency discriminated against her on the basis of reprisal regarding her FY 14 performance evaluation."  Id.  The Decision stated that Mavrogianis was "entitled to full, make-whole relief" as a result of the Department's failure to accommodate, including provision of requested accommodations, restoration of all leave taken as a result of the failure to accommodate, compensatory damages, attorney fees and costs, and other miscellaneous relief.  See id. at 29-36.

Shortly thereafter, on April 14, 2016, the OEDCA issued a "Rescission of Final Agency Decision" rescinding the aforementioned FAD.  See Pl. Exh. 3 (Rescission Order).  The Rescission Order explained that "[a]fter issuance of the FAD" adjudicating Mavrogianis's EEO complaints, "OEDCA received notice that [Plaintiff] had filed a civil action in the U.S. District

Court for the District of Columbia on December 10, 2014." Id. at 1.  Because the claims

Mavrogianis raised in her EEO complaints "are identical to those raised in the Civil Action

pending adjudication before the U.S. District Court for the District of Columbia, as of December

10, 2014, OEDCA had no jurisdiction to render a FAD on this same complaint on March 31,

2016." Id.  It therefore "rescind[ed] in its entirety[] the March 31, 2016 FAD administratively

adjudicating [Plaintiff's EEO] complaints." Id. at 2.

On May 23, 2016, while the parties were in the middle of discovery, Plaintiff filed the

instant Motion for Partial Summary Judgment on her Rehabilitation Act (failure-to-

accommodate) claim citing the factual findings contained in the March 31, 2016, FAD.  See

Partial MSJ (ECF No. 15, Attach. 5) at 1.  She requests that her remaining discrimination and

retaliation claims arising under Title VII be allowed to proceed separately to further discovery

and trial.  See id. at 2 n.2.  The Partial Motion is now ripe.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in his favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

### III.   Analysis

Plaintiff appears to concede that her Motion relies exclusively on the FAD issued by the VA's Office of Employment Discrimination Complaint Adjudication on March 31, 2016. See Partial MSJ at 3 ("[O]ur motion is based on findings recently made by DVA's Office of Employment Discrimination Complaint Adjudication in a lengthy and definitive Final Agency Decision dated March 31, 2016."); see also Pl. SOF at 1 n.1 ("All facts set out herein are taken from the Final Agency Decision[,] . . . which is, of course, as a final agency decision of [the VA], also an admission of that Department and thus of the defendant Secretary."). Her sole contention, in moving for summary judgment on her failure-to-accommodate claim, is that "[n]o

reasonable fact-finder, when confronted with DVA's own EEO officers' determination that management lacked good faith . . . could conclude that the DVA did comply with the Rehabilitation Act." Reply at 5.

Defendant counters that, because the FAD was rescinded on April 14, 2016, the written Decision – including the factual findings and conclusions of law contained therein – "does not exist," "should be stricken by this Court," and cannot be considered as facts not in dispute or an admission of the VA. See Opp. at 8. His Response to Plaintiff's Statement of Material Facts further asserts that, if the FAD is disregarded, certain material facts surrounding Plaintiff's disability and her employer's accommodations remain in dispute, making any resolution of her failure-to-accommodate claim premature. See, e.g., Def. SOF, ¶ 13 (disputing Plaintiff's account of the reason "why the DVA did not approve the three-day telework request") (citing EEO Investigative Report at 195-96). Indeed, Plaintiff never asserts that, absent the FAD, she may prevail on her Motion. The central question for the Court, then, is what effect, if any, the FAD has. If it is, as the Secretary claims, no longer valid, Plaintiff's Motion has no undisputed-facts leg on which to stand.

In arguing that the agency had no choice but to withdraw the FAD, Defendant relies primarily on 29 C.F.R. § 1614.107, the regulation governing dismissal of EEO complaints, and Johnson v. Gonzales, 418 F. Supp. 2d 1 (D.D.C. 2006), in which another court in this district interpreted that regulation in a similar case. The regulation mandates that

> the agency shall dismiss an entire complaint:
> . . .
> (3) That is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint, or that was the basis of a civil action decided by a United States District Court in which the complainant was a party.

29 C.F.R. § 1614.107(a)(3).  In keeping with this regulation, then, "[a] claimant's filing of a civil action generally terminates the agency's processing of his complaint."  <u>Johnson</u>, 418 F. Supp. 2d at 3; <u>accord</u> <u>Robbins v. Bentsen</u>, 41 F.3d 1195, 1198 (7th Cir. 1994) ("[S]ection 1614.107[(a)(3)] <u>requires</u> that once an employee has filed a civil action, the agency shall dismiss the complaint '[t]hat is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint. . . .'") (emphasis added); <u>see also</u> <u>Dick v. Holder</u>, 80 F. Supp. 3d 103, 117 (D.D.C. 2015) ("[A]fter 180 days following the filing of an administrative [EEO] charge, if the agency has not taken final action and no [administrative] appeal has been filed, the complainant can forgo a hearing and 'is authorized under . . . the Rehabilitation Act to file a civil action in an appropriate United States District Court[.]'") (citing 29 C.F.R. § 1614.407(b)).

    In <u>Johnson</u>, Judge Ricardo Urbina agreed that "[a]n agency must dismiss an EEO charge when the complainant brings the charge before a federal court."  418 F. Supp. 2d at 2 (citing 29 C.F.R. § 1614.107(a)(3)).  In that case, the plaintiff filed an EEO complaint with the Federal Bureau of Investigation, and that agency's Complaint Adjudication Office issued a Final Agency Decision in his favor on December 7, 2004.  <u>Id.</u> at 1.  On January 27, 2005, however, that Office informed the plaintiff by letter that it was withdrawing its Decision.  <u>Id.</u>  "According to the letter, the CAO withdrew its FAD 'because at the time of its issuance, there was a pending civil complaint in federal court, filed by the complainant [on July 9, 2004], which included all the issues raised in his EEO complaint.'"  <u>Id.</u> (citation omitted).  Judge Urbina held that "under the applicable EEO regulations, the [agency] was required to dismiss the EEO charge. . . . Because it was improper for the CAO to have rendered a FAD in a matter that was terminated, the agency withdrew its FAD."  <u>Id.</u> at 3.  Relying on the plain language of the regulation, the plaintiff's

failure to "point to any authority stating that the CAO improperly withdrew the FAD," and the general practice of courts to "routinely withdraw orders and judgments mistakenly issued," Judge Urbina concluded that the FBI properly withdrew its erroneously issued FAD. Id. at 3. In other words, the agency made a mistake, and it was entitled to correct it.

The same is true here. The OEDCA ought to have dismissed Mavrogianis's EEO complaints pursuant to 29 C.F.R. § 1614.107(a)(3) before the FAD was issued in March 2016, as both components of that dismissal requirement were satisfied: First, there is no dispute that the FAD was issued more than 180 days after she filed her administrative complaints in February 2014 and March 2015. Second, the Complaint in this civil action "specifies that the issues before the Court are those raised in" Mavrogianis's EEO complaints – "namely, [her] allegations that she was denied a reasonable accommodation and subjected to harassment because of her disabilities, and further subjected to reprisal when given an unfair performance appraisal for fiscal years 2013 and 2014." Rescission Order at 1. The Rescission Order plainly explains that the Office failed to dismiss the EEO complaints pursuant to Section 1614.107(a)(3) merely because it was not aware of this case, as it did not "receive[] notice" of the filing of this lawsuit until after it issued the FAD. See id. at 1.

Put simply, the OEDCA made a mistake and, just as in Johnson, it is entitled to correct it. The Court concludes, accordingly, that the VA's withdrawal of the FAD was appropriate. Accord Iskander v. Dep't of Navy, 7 F. Supp. 3d 590, 594 (E.D.N.C. 2014) ("[O]nce the employee files a federal lawsuit, neither she nor the agency have a duty to continue the administrative investigation. In fact, the agency is required to dismiss the [EEO] complaint once the employee has filed suit, just as the Navy dismissed Iskander's complaint in this case.") (citing 29 C.F.R. § 1614.107(a)(3)); Laudadio v. Johanns, 677 F. Supp. 2d 590, 595 (E.D.N.Y.

2010) ("The USDA did not issue its FAD with respect to Laudadio's first EEO complaint until August 21, 2007, almost six months after Laudadio commenced this action in federal court. . . . The FAD dismissed the claim pursuant to 29 C.F.R. § 1614.107(a)(3) as a 'compliant that is the basis for a pending civil action in a United States District Court.'").

As a fallback argument, Plaintiff contends that, regardless of the FAD's administrative viability, its findings of fact and conclusions of law should nonetheless be considered "admissions" by Defendant for the purposes of this Motion.  See Partial MSJ at 2, 29. Defendant, for his part, points to Johnson's statement that a rescinded FAD is "a non-existent FAD," and he urges the Court to conclude, as did that court, that it has no legal or other effect. See 418 F. Supp. 2d at 3.

The VA and Judge Urbina clearly have the better argument here.  Where, as here, the agency had no jurisdiction to issue its initial decision, its subsequent withdrawal of the same strips it of any significance whatsoever.  Just as a court's decisions, once vacated, are effectively erased from any ongoing or future litigation, so, too, does OECDA's rescinded decision cease to exist for all intents and purposes.

Because, as Plaintiff acknowledges, her Motion relies entirely on the March 31, 2016, FAD to establish the undisputed material facts that, she asserts, compel judgment in her favor, the Court's conclusion that the withdrawn FAD has no legal or factual effect dooms her position. The Court, accordingly, will deny the Motion.  Her Rehabilitation Act claim, along with her others, may thus proceed to further discovery and, if necessary, trial.

## IV.    Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Partial Summary

Judgment without prejudice and permit discovery to resume.  A contemporaneous Order will so

state.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  August 26, 2016